Mr. Justice Van Orsdel
delivered the opinion of the Court:
The first error complained of relates to the fifth instruction given by the court to the commissioners for their guidance in fixing the market value of the property. The instruction is as follows : “The commissioners are further instructed that they shall take no evidence with respect to any proceedings had either by the board of assessors of the District of Columbia or the board of equalization and review, or any evidence touching any proceedings had relative to the fixing or reduction of the valuation *99 placed or to be placed upon said property for the purposes of taxation.”
It is apparent that the court had in mind the well settled rule that the assessed value of property for the purposes of taxation is not in itself competent evidence in fixing its value in any independent proceeding. The reason for this rule is that the assessed value for taxable purposes is not fixed by the owner, but by the proper taxing officers. It is, therefore, not binding upon the parties, or either of them, in a separate action. But this rule extends only to the valuation arrived at by the taxing officers. It does not extend to evidence given by the owner of property for the purpose of influencing the officers in arriving at a proper valuation on which to base an assessment of taxes. The error here complained of does not relate to the application of the above imle.
Plaintiff attached as an exhibit to its bill, and subsequently offered in evidence, the affidavit of Wilton J. Lambert, who was defendant’s agent and attorney at the time the value of the property for purposes of taxation was fixed. See. 5 of the act of Congress of July 1, 1902, provides “that hereafter all real estate in the District of Columbia subject to taxation, including improvements thereon, shall be assessed at not less than two thirds of the true value thereof.” [32 Stat. at L. 616, chap. 1352.] In the blank affidavit submitted by the District board of equalization to property owners, and which was filled out and sworn to by Lambert, appears the following questions and answei’s:
“What is the true value of the ground above described?
“Answer. $5 per foot, $29,615 for the entire lot.
“What is the true value of the improvements above described ?
“Answer.-.”
This testimony related to the property in controversy. It was the valuation fixed by defendant’s authorized agent as its-true value. The method of ascertaining the true value fixed by the board of equalization was the same as that adopted by* the court in instructing the commissioners in this case. This; *100 affidavit was the written sworn admission of defendant, through his agent and attorney, in a matter where the statement of the agent must be treated as the declaration of the principal. It being against his interest, it was clearly admissible for what it was worth as determining the value defendant placed upon the property at the time the valuation for assessment purposes was made. It is not a bar to its admission that this valuation was made- about two years prior to the date when plaintiff sought to avail itself of the statement as evidence in this case. It would not have been difficult by competent evidence to establish any difference in the valuation of the property between the time the valuation for the purposes of taxation was made and the time the evidence in this case was taken.
The error assigned relating to the formation of the decree consists in requiring plaintiff to pay rental at the new rate from July 1, 1909, the date of the termination of the original ten-year lease. The term of the original lease was left by its terms uncertain. If plaintiff had elected to terminate the lease, it would have ended with the expiration of ten years, or, if the appraisement had been made on or before the expiration of the ten years, the original lease would have ended with the expiration of that period. But if the appraisement had not been completed at the expiration of the ten-year period, the original lease was to continue in force until the appraisement for the renewal lease should be completed. The language of the lease is clear and unambiguous, “and until said appraisement has been made, the rent for said premises shall continue at the rate of four thousand dollars ($4,000), as and payable as hereinabove specified.” This language will admit of but one construction. There must be a basis found for the rent under the renewal lease, and until that basis is established the old rate was to continue. The ■only basis for the new rate provided is found in the appraisement, and until the appraisement has been made there is no basis on which to compute the rate. The language authorizing the renewal, and the method of fixing the rate of rental and when that new rate shall begin, are all prospective. There is no reason, either from the wording of the lease or the ap *101 parent intention of the parties, for giving the language retroactive effect. Since the parties have not been able to agree, and have, without objection on the record, referred this controversy to the court, the appraisement cannot be said to have been completed until there has been entered a final decree in the matter. From that date only can the new rate be computed, and until then plaintiff is entitled to continue under his original lease at the rate of rental and on the terms therein provided.
The above considerations make it impossible to modify the decree and escape retrial. It is therefore unnecessary to consider the numerous additional errors assigned in respect of the admission of evidence on hearing before the commissioners. It is sufficient to suggest that a number of the exceptions are well taken. Especially does the error in admitting the report of what is known as the “Commission in the Five Squares Condemnation” stand out in bold relief. That was a proceeding for the condemnation by the United States of five squares of ground with the improvements thereon, situated between Fourteenth and Fifteenth streets, N. W., in the city of Washington, extending from Pennsylvania avenue south to the Mall. There is nothing to show that valuations fixed by that commission, of property more or less remotely situated from the property in controversy, was such as to be any guide whatever to-the commissioners in this case. There is nothing to show that, the location or the improvements, and the use to which they were put, were so similar to the property here involved as to make the evidence admissible in this proceeding. Plaintiff' was not interested in that proceeding, had no opportunity to-examine the witnesses whose testimony was here used against it, or any means of ascertaining whether the evidence there-adduced had any comparative value whatever in fixing the value-of the property here involved. These are a few of the many objections which suggest the inadmissibility of this evidence.
The manner in which this matter was disposed of in the; court below seems somewhat peculiar. The parties, by going-into court without objection, substituted the machinery of the-court for the method provided in the contract. It became a- *102 suit iu equity; not a mere arbitration. We think the ends of justice would be much better accomplished if the court would try the cause as is usual in equity proceedings, where the evidence can be taken in accordance with the forms of law, and not in the desultory, careless manner in which it was taken by the appraisers in this case.
The decree is reversed, with costs, and the cause remanded with directions to grant a new trial. Reversed.